**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DAYNA BROWN,**

                        **Plaintiff,**                    **3:12-cv-411**
                                                          **(GLS/DEP)**

            **v.**

**STATE UNIVERSITY OF NEW**
**YORK et al.,**

                        **Defendants.**
_____

**APPEARANCES:**                         **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Dayna Brown
Pro Se
908 Taylor Drive
Vestal, NY 13850

**FOR THE DEFENDANTS:**
HON. ERIC T. SCHNEIDERMAN          HEATHER R. RUBENSTEIN
New York State Attorney General    Assistant Attorney General
The Capitol
Albany, NY 12224

**Gary L. Sharpe**
**Chief Judge**

## <u>MEMORANDUM-DECISION AND ORDER</u>

### I. <u>Introduction</u>

Plaintiff _pro se_ Dayna Brown commenced this action against

defendants State University of New York, Binghamton University, Civil

Service Employees Association[1] (CSEA), Nancy Abashian, Valerie Hampton, Cindy Olbrys, Karen Paugh, Caryl Ward, and Cindy Williams, alleging violations of Title VII of the Civil Rights Act of 1964,[2] 42 U.S.C. § 1981, the Americans with Disabilities Act,[3] and the New York State Human Rights Law[4] based on race, gender, and disability, as well as claims of intentional and negligent infliction of emotional distress. (*See generally* Compl., Dkt. No. 1.) Pending before the court is defendants' motion for summary judgment. (Dkt. No. 88.) For the reasons that follow, the motion is granted.

## II. **Background**[5]

Brown, an African-American male, began his employment with SUNY Binghamton as a library clerk in March 2000. (Defs.' Statement of Material Facts (SMF) ¶¶ 1, 9, Dkt. No. 88, Attach. 7; Dkt. No. 88, Attach. 2 at 24-25.) Throughout his employment, Brown alleges that he was "harassed[

---

[1] After this action was commenced, CSEA filed a motion to dismiss, which was granted by this court. (Dkt. No. 45.) CSEA was therefore terminated as a party to this action.

[2] *See* 42 U.S.C. §§ 2000e–2000e-17.

[3] *See* 42 U.S.C. §§ 12101-12213.

[4] *See* N.Y. Exec. Law §§ 290-301.

[5] Unless otherwise noted, the facts are not in dispute.

and] treated differently . . . because of his race, . . . age, gender, [and] disability." (Compl. ¶ 2.) Brown claims that he was "subjected to different levels of harassment" over the course of his employment. (Dkt. No. 88, Attach. 2 at 48.) Specifically, he claimed to be the victim of two instances of sexual harassment in 2007, the first when a coworker allegedly "brought sexual content in[to] the workplace," (*id.* at 56), and the second involving an unknown individual placing a cartoon on Brown's desk, (*id.* at 61). Additionally, he felt that he was being singled out by having his movements in the office tracked, (*id.* at 46), was falsely accused of throwing out books, (*id.* at 52), and was asked by a coworker if he had marched in the Martin Luther King, Jr. Day parade, (*id.* at 64).

Beginning in late 2010, Abashian, the Head of Reader Services at the SUNY Binghamton library, (Defs.' SMF ¶ 3), who Brown referred to as his immediate supervisor, (Dkt. No. 88, Attach. 2 at 46), expressed concerns about Brown's behavior and deteriorating work performance. (Dkt. No. 96, Attach. 2 at 1-3.) Specifically, she noted that Brown was not following instructions, was giving incorrect information to couriers delivering and accepting shipments from the library, failed to report for work assignments, and had several unexplained absences. (*Id.* at 1-2.) Additionally, he was

"frequently observed to be disheveled in appearance," wore "pajama type pants" to work, engaged in personal disputes and "inappropriate and aggressive behavior" in the workplace, and refused to perform certain job duties. (*Id.* at 2-3.) On February 28, 2011, a request was made for Brown to submit to an independent medical examination (IME) to determine his fitness for duty, pursuant to New York Civil Service Law § 72.[6] (Dkt. No. 88, Attach. 4 at 13-15.)

Brown was notified, on March 4, 2011, that he was being placed on a leave of absence, and was directed to submit to a medical examination because of "serious concerns" about his behavior and deteriorations in his work performance. (*Id.* at 31.) He was permitted to charge his accrued sick leave during this leave of absence. (*Id.*) Brown was examined by two independent medical professionals in March and April 2011, with both concluding that he was unable to perform his job duties. (*Id.* at 22-23, 25-29.)

_____

[6] New York Civil Service Law § 72(1) provides, in relevant part, that "[w]hen in the judgment of an appointing authority an employee is unable to perform the duties of his . . . position by reason of a disability, . . . the appointing authority may require such employee to undergo a medical examination." If, after the examination, the employee is deemed not physically or mentally fit to perform his duties, the employee "may be placed on leave of absence." *Id.* If an employee placed on such leave does not demonstrate, within one year, that he is then fit to perform his duties, "his . . . employment status may be terminated." *Id.* § 72(4).

4

After Brown had been requested to submit to the IMEs, on April 7, 2011, he filed a discrimination charge with the New York State Division of Human Rights (DHR), alleging discrimination based on race, gender, and disability, and concluding that he was placed on a leave of absence even though he was "capable of performing the duties of [his] job." (*Id.* at 65-67.) The DHR found no probable cause to believe that SUNY Binghamton had engaged in the discriminatory practices of which Brown complained. (*Id.* at 98-99.) These findings were adopted by the Equal Employment Opportunity Commission (EEOC), which issued Brown a right to sue letter on December 9, 2011. (*Id.* at 102.)

Ultimately, in May 2011, after Brown had been determined to be unfit to perform his job duties, and while he was still on a leave of absence, SUNY Binghamton informed him that he had exhausted all of his leave accruals, but was eligible to be placed on sick leave with half pay, which Brown elected to do. (Defs.' SMF ¶ 11; Dkt. No. 88, Attach. 3 at 8-9.) On February 3, 2012, Brown was notified that his leave of absence would end, and his employment would terminate, on March 4, 2012, "due to absence of one continuous year," but that Brown could apply for restoration to duty if he was then medically fit to return to work. (Dkt. No. 88, Attach. 4 at 54.)

In the interim, Brown appealed the determination that he was unfit to perform his job duties, and a civil service hearing occurred on April 27, 2012, after which the hearing officer determined that the university's section 72 determination should be upheld.  (Dkt. No. 88, Attach. 5 at 2-8.) Accordingly, effective June 20, 2012, Brown was "separated from state service pursuant to Section 72 of the New York State Civil Service Law." (*Id.* at 10.)

### III.  Standard of Review

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

### IV.  Discussion

The court begins by noting that it is difficult to discern the exact nature of Brown's claims against the remaining defendants and his theory of liability as pleaded in the complaint.  His response to defendants' summary judgment motion, (Dkt. No. 95), provides no further clarification in this respect.  Thus, as far as the court can tell, and construing Brown's

claims liberally, as is required in light of his *pro se* status, he appears to assert that he was "terminated because of his race," (Compl. ¶ 77), and in retaliation for complaints he made regarding his treatment at work, (*id.* ¶¶ 84-85), as well as subjected to a hostile work environment based on his race, gender, and disability, (*id.* ¶¶ 2, 77). He also references, in passing, a "failure to accommodate" his disability. (*Id.* ¶ 1.) In their motion for summary judgment, defendants raise several grounds for dismissal of Brown's claims. (Dkt. No. 88, Attach. 1.) The court will address each of these in turn below.

## A.    <u>Discrimination</u>

Defendants argue first that, under the 300-day EEOC statute of limitations, all claims asserted by Brown which arose prior to June 11, 2010 are barred as untimely, and his claims are otherwise insufficiently pleaded. (Dkt. No. 88, Attach. 1 at 5-9, 10-12.) In response, Brown makes no cogent argument, instead simply stating that he "filed a complaint with NYS Human Rights Commission within . . . 300 days after 12/27/10 incident at work . . . and internal grievance filed to [Human Resources on] November 12, 2010." (Dkt. No. 95 at 3.) The court agrees with defendants that, to the extent they rely on acts occurring prior to June 11, 2010, Brown's

discrimination and disparate treatment claims are untimely, and are otherwise dismissed as unsupported by the record.

Under Title VII,[7] it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Discrimination claims are analyzed under the *McDonnell Douglas* burden-shifting rules, which place upon the plaintiff the initial burden of making out a prima facie case of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To satisfy this initial burden, the plaintiff "'must show: (1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.'" *Brown v. City of Syracuse*, 673 F.3d

---

[7] Title VII claims and claims of employment discrimination under the New York State Human Rights Law are governed by the same legal standards. *See Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714-15 (2d Cir. 1996). Similarly, "[b]oth the Supreme Court and Second Circuit have treated the substantive issues arising under Title VII and § 1981 identically," *Staff v. Pall Corp.*, 233 F. Supp. 2d 516, 527 (S.D.N.Y. 2002) (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989); *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 693 (2d Cir. 1998)), *aff'd* 76 F. App'x 366 (2d Cir. 2003). Thus, Brown's claims pursuant to 42 U.S.C. § 1981 and the Human Rights Law survive or fail on the same basis as his Title VII claims.

141, 150 (2d Cir. 2012) (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008)).

"A plaintiff's establishment of a *prima facie* case gives rise to a presumption of unlawful discrimination that shifts the burden of production to the defendant, who must proffer a legitimate, nondiscriminatory reason for the challenged employment action." *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005) (internal quotation marks and citations omitted). If the defendant comes forward with a legitimate, nondiscriminatory reason for the challenged employment action, the presumption of discrimination drops out of the analysis, and the defendant "will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000).

Ultimately, once the burden shifts back to the plaintiff, he must show, "without the benefit of the presumption, that the employer's determination was in fact the result of racial discrimination." *Holcomb*, 521 F.3d at 138. The plaintiff must demonstrate "by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Tex. Dep't of Cmty. Affairs v.*

*Burdine*, 450 U.S. 248, 253 (1981). As further explained by the Supreme Court, to demonstrate pretext, a plaintiff must show "*both* that the [employer's offered] reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *see Fisher v. Vassar Coll.*, 70 F.3d 1420, 1433 (2d Cir. 1995). However, conclusory allegations of discrimination are insufficient to defeat a motion for summary judgment. *See Holcomb*, 521 F.3d at 137; *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997).

The analysis is virtually the same for alleged violations of the ADA. *See Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999). The ADA prohibits discrimination against any "qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To state a prima facie case of disability discrimination under the ADA, a plaintiff must show that:

> (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability.

*Giordano v. City of N.Y.*, 274 F.3d 740, 747 (2d Cir. 2001) (quoting

*Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty.*

*Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir. 1999)).

As a prerequisite to commencing a discrimination claim under Title

VII or the ADA, a claimant must file a charge with the EEOC within 300

days of the allegedly unlawful employment action.  *See Valtchev v. City of*

*N.Y.*, 400 F. App'x 586, 588 (2d Cir. 2010) (citing 42 U.S.C. § 12117(a));

*Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996)

(citing 42 U.S.C. § 2000e-5(e)).  Where the act in question is discrete, or

easy to identify—such as "failure to promote, denial of transfer, or refusal to

hire," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114

(2002)—neglecting to file a timely EEOC charge is fatal.  *See Valtchev*,

400 F. App'x at 588.  Absent some exception, "only events that occurred

during the 300-day period prior to filing . . . are actionable."  *Van Zant*, 80

F.3d at 712.

Here, Brown's DHR charge[8] was filed on April 7, 2011, extending the

reach of the 300-day statute of limitations to June 11, 2010.  (Dkt. No. 88,

_____

[8] Brown's DHR charge was sent to the EEOC for dual filing purposes on the same day. (Dkt. No. 88, Attach. 4 at 74.)

11

Attach. 4 at 65.)  The only act even alleged by Brown to have occurred within that period is a March 4, 2011 "negative evaluation based on false allegations of conduct in the workplace," (Compl. ¶ 24(c)), but Brown has failed to submit any record evidence supporting his allegation that the "negative evaluation" at issue was in fact false, was motivated at all by his race, gender, or disability, or that it played any role in his termination.[9]  He has not even submitted the evaluation itself, leaving the court with no objective insight as to its content, and Brown's "self-serving and conclusory statements made at [a] deposition . . . are insufficient to avoid summary judgment on an issue as to which the nonmovant bears the ultimate burden of proof."  *Lee v. ITT Standard*, 268 F. Supp. 2d 315, 354 (W.D.N.Y. 2002) (citing *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995)); (Dkt. No. 88, Attach. 2 at 43-44).

Separate and apart from defendants' timeliness argument, after review of the record, the court concludes that Brown has critically failed to come forth with any evidence that any alleged employment actions taken

---

[9] Notably, there is no allegation that this particular evaluation played any role in his ultimate termination or any other adverse employment action, and, although not an argument raised by defendants, "negative evaluations, standing alone without any accompanying adverse results, are not cognizable [as adverse employment actions under Title VII]."  *Siddiqi v. N.Y.C. Health & Hosps. Corp.*, 572 F. Supp. 2d 353, 367 (S.D.N.Y. 2008).

against him, including his termination, were based on his race, gender, or disability. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (finding that a plaintiff must rebut evidence of legitimate, nondiscriminatory reasons for dismissal with specific evidence tending to show not only that those reasons were a pretext, but that unlawful discrimination was the real reason for the employment decision). It is well settled that "'conclusory allegations or unsubstantiated speculation' [are in]sufficient to raise a triable issue of fact as to whether . . . discriminatory animus" played a role in an adverse employment action. *DiGirolamo v. MetLife Grp., Inc.*, 494 F. App'x 120, 122 (2d Cir. 2012) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)); *see Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 561 (2d Cir. 1997) (finding "purely speculative" assertions of discriminatory animus insufficient to defeat summary judgment). The only reasonable conclusion that can be drawn from the record before the court is that Brown was terminated because of his deteriorating behavior and work performance, (Dkt. No. 96, Attach. 2), and in response to the ultimate finding, after IMEs and an administrative hearing pursuant to the New York Civil Service Law, that he was unfit to perform his duties. (Dkt. No. 88, Attach. 5 at 2-8, 10.) Brown has offered

no evidence to support a finding that these reasons were pretextual, or that any action taken against him was in any way motivated by his race, gender, or disability.  Accordingly, for the reasons articulated above, Brown's claims that he was "terminated because of his race, equal pay, age, gender, [and] disability," (Compl. ¶ 2) are dismissed.

**B.  <u>Retaliation</u>**

With respect to Brown's retaliation claims, defendants argue that they are entitled to summary judgment dismissing these claims because the record evidence shows that the only potential act of retaliation—Brown's termination, (Compl. ¶ 85)—occurred as a result of the section 72 hearing and Brown's unfitness to perform his job duties, and not because of any discriminatory animus.  (Dkt. No. 88, Attach. 1 at 9-10.)  Brown has offered no cognizable response to this argument.  The court agrees with defendants, and, accordingly, grants summary judgment to defendants on Brown's retaliation claim.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [that employee] has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or

participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under Title VII, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *McMenemy v. City of Rochester*, 241 F.3d 279, 282-83 (2d Cir. 2001).

Here, as further discussed above, the only evidence of record indicates that Brown was terminated because he was determined to be no longer fit to perform his duties. Notably, the process leading to Brown's termination had already been set in place in March 2011, when he was placed on a leave of absence due to "serious concerns" about his behavior and work performance, (Dkt. No. 88, Attach. 4 at 31), which was prior to the filing of his DHR complaint in April 2011, (*id.* at 65). Although, in his response to defendants' motion, Brown notes that he filed an "internal complaint" with human resources on November 12, 2010, (Dkt. No. 95 at 6), he provides no further insight into the contents of this complaint, and the exhibit he cites as support makes no reference whatsoever to any protected activity or characteristic, (*id.* at 16-17). While Brown's allegations

of retaliation may have been sufficient at the motion to dismiss stage, they do not suffice to defeat defendants' summary judgment motion.  *See Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) ("[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." (internal quotation marks and citation omitted)).   Accordingly, defendants' motion is granted.

## C.   <u>Hostile Work Environment</u>

With respect to Brown's hostile work environment claim, defendants argue that Brown has not sufficiently pleaded or proven the existence of a hostile work environment.  (Dkt. No. 88, Attach. 1 at 6-8, 10-12.)  Brown has offered no response to this argument.  For the following reasons, defendants' motion for summary judgment on this claim is granted.

Where a discrimination claim is predicated on the existence of a hostile work environment, the plaintiff must demonstrate that the conduct in question: "(1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's . . . protected characteristic."  *Robinson v. Harvard Prot. Servs.*, 495 F. App'x

140, 141 (2d Cir. 2012) (internal quotation marks omitted).  In determining whether a hostile work environment claim has been established, "courts should examin[e] the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's [job] performance."  *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 702 F.3d 685, 693 (2d Cir. 2012) (internal quotation marks and citation omitted).

After considering the record as a whole, the evidence before the court simply falls well short of establishing a hostile work environment on the basis of Brown's race, gender, or disability.  With respect to the past sexual harassment referenced by Brown in his complaint, (Compl. ¶ 53), Brown indicated in a police report that "someone had left a cartoon with sexual content on the copier," but he did not know who was responsible for it and did not allege that it was intended for him to find it, (Dkt. No. 88, Attach. 4 at 96).  Although Brown made passing reference to other instances of allegedly offensive conduct in his deposition testimony, almost all of these mentions refer to isolated incidents that are described in a vague or conclusory manner.  By way of example, Brown notes that at

some point, Paugh, a coworker in the library, (Defs.' SMF ¶ 6), asked him if he marched in the Martin Luther King, Jr. Day parade, and states in conclusory fashion, without further detail or explanation, that she "made the workplace a hostile work environment" by "[c]onstant[ly] yelling at [him]." (Dkt. No. 88, Attach. 2 at 64-65.)  He also testified that he was generically "subjected to different levels of harassment" over the course of his employment at Binghamton.  (*Id.* at 48.)  Again, such "self-serving and conclusory statements made at [a] deposition . . . are insufficient to avoid summary judgment on an issue as to which the nonmovant bears the ultimate burden of proof."  *Lee*, 268 F. Supp. 2d at 354.

He also claimed that Abashian singled him out by tracking his movements in the office, offering only bare speculation that this was because of his race and/or gender, and reported that further tactics would "probably be outlined in a future disclosure and future witness depositions," though the court is in receipt of no such evidence.  (Dkt. No. 88, Attach. 2 at 46-47.)  Brown testified that, in December 2010, Abashian told him to throw his lunch and coats on the floor, but he did not "understand why she asked [him] to do that," (*id.* at 47), and there is no indication that this incident was motivated by his race, gender, or disability.  Notably, Brown

later testified that the hostile environment stemmed from him getting reprimanded if he failed to complete his assigned tasks, (*id.* at 55), a facially neutral complaint that has nothing to do with a protected characteristic.

Thus, all of the incidents raised by Brown either vaguely and generically refer to "harassment" and/or a "hostile work environment," or, of those incidents that are specifically referenced, appear on their face to have nothing to do with his race, gender, or disability; while perhaps unpleasant, Brown has not demonstrated that any of these instances occurred "because of [his] . . . protected characteristic[s]." *Robinson*, 495 F. App'x at 141 (internal quotation marks and citations omitted). Further, the Second Circuit has held that for claims of hostile work environment, the plaintiff "must prove more than a few isolated incidents of racial enmity." *Snell v. Suffolk Cnty.*, 782 F.2d 1094, 1103 (2d Cir. 1986); *see Schwapp*, 118 F.3d at 110 ("[I]nstead of sporadic racial slurs, there must be a steady barrage of opprobious racial comments."). Despite Brown's allegations to the contrary, his testimony and the other record evidence fails to establish that defendants' conduct was sufficiently severe or pervasive to constitute a hostile work environment. Therefore, Brown's hostile work environment

claim is dismissed.

**D.    Failure to Accommodate**

An employer may also be liable under the ADA where it fails to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."  42 U.S.C. § 12112(b)(5)(A); *see McBride v. BIC Consumer Prod. Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009).  To make a prima facie showing of an employer's failure to accommodate, a plaintiff must establish that "(1) [he] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004).

To the extent Brown asserts a claim for failure to accommodate his disability, this claim may be summarily dismissed, as there is absolutely no evidence in the record to support such a claim.  In fact, upon his hire in March 2000, Brown indicated on an ADA Job Analysis Form that he was able to perform all job duties and requirements without accommodation.

(Dkt. No. 88, Attach. 3 at 2.)  Further, Brown himself testified that the only accommodation request he ever made was an annual request for handicapped parking, which was never denied to him.  (Dkt. No. 88, Attach. 2 at 49-50.)  Accordingly, any claim for failure to accommodate under the ADA is dismissed.

**E.**    **State Law Claims**

Because Brown's Title VII and ADA claims are dismissed, his claims pursuant to the New York Human Rights Law fail for the same reasons. *See Schiano*, 445 F.3d at 609.  Further, because Brown's remaining claims involve only state law, the court declines to exercise supplemental jurisdiction over them.  "In the absence of original federal jurisdiction, the decision of whether to exercise jurisdiction over pendent state law claims is within the court's discretion."  *Butler v. LaBarge*, No. 9:09-CV-1106, 2010 WL 39077258, at *3 (N.D.N.Y. Sept. 30, 2010) (citing *Kolari v. N.Y. Presbyterian Hosp.*, 455 F.3d 118, 121-22 (2d Cir. 2006)).  When all federal claims have been dismissed before trial, the balance of factors in deciding whether to exercise jurisdiction over remaining state law claims leans toward dismissal.  *Kolari*, 455 F.3d at 122.  Accordingly, the court declines jurisdiction over any state law claims and they are dismissed from

this action.

## V.  <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 88) is **GRANTED**; and it is further

**ORDERED** that Brown's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

February 19, 2015
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court